TAMIKA MCDONALD,

    Plaintiff,

v.

OFFICER JAMES CUNNINGHAM,
LA VERGNE POLICE DEPARTMENT,
and MAYOR JASON COLE,

    Defendants.

Case No. 3:24-cv-1341

Judge Eli J. Richardson
Magistrate Judge Luke A. Evans

To:    The Honorable Eli J. Richardson, District Judge

**REPORT AND RECOMMENDATION**

Pursuant to Rule 72(b) of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 636(b)(1)(A) & (B), this matter was referred to the Magistrate Judge for report and recommendations on dispositive motions (Doc. No. 7). Pending before the Court is the "Motion to Dismiss on Behalf of Defendants" (Doc. No. 11, "Motion to Dismiss"). For the following reasons, it is recommended that the Motion to Dismiss be GRANTED.

I.    **Background**

Pro se plaintiff Tamika McDonald ("McDonald") brings this action pursuant to 42 U.S.C. § 1983 seeking redress for violations of her constitutional rights as secured by the Fourth and Fourteenth Amendments (Doc. No. 1 at p. 5).[1] McDonald is a 42-year-old African-American female (*Id.*). McDonald's claims against Defendant James Cunningham ("Cunningham"), a "mixed Caucasian / African American" male La Vergne Police officer, relate to racial

---

[1]    The Court notes that McDonald also included an exhibit to her complaint, which details discrimination claims related to her employment. However, such allegations do not appear to be relevant to the underlying matter or to any named Defendants (Doc. No. 1-1).

discrimination (*Id.*). McDonald's claims against the La Vergne Police Department and Mayor Jason Cole, however, are limited to only a single reference to their supervisory role (*Id.*). More specifically, McDonald alleges that the La Vergne Police Department supervisors and La Vergne Mayor's Office were "notified of these racial discriminations and made no attempt to address nor redress the abuse of authority violating the oath of their employee" (*Id.*).

### A. Factual Background

According to her complaint, on May 8, 2024, McDonald had a "verbal argument" with her tenant, Tammie Phillips ("Phillips"), about a "broken dryer latch" (*Id.*). Phillips was a tenant at McDonald's residence. McDonald claims that Phillips' son, Tavonte Phillips-Gillard ("Gillard"), was present for the argument and threatened her "with a weapon" (*Id.*). In response, McDonald "brandished a certified licensed handgun solely holding it to the ground" (*Id.*).

Cunningham responded to a domestic-disturbance police call and arrived at McDonald's residence (*Id.* at p. 6). After speaking with McDonald, Phillips and Gillard, and reviewing available Ring doorbell audio recordings that captured the incident, Cunningham charged McDonald with two counts of "Class C Felony–Aggravated Assault–Domestic" (*Id.*). McDonald claims that Cunningham's affidavit intentionally omitted the following facts:

   a. "[McDonald] said to [Phillips] get out of my face as a euphemism, not a literal meaning as the affidavit states.

   b. [Gillard] did not intervene to protect his mother, [Phillips], as the affidavit states, due to the fact that on the Ring audio the conversation [McDonald] had with [Phillips] ended 20 seconds before [Gillard] can be heard yelling 'I'LL KILL YOU BITCH' 'I'LL KILL YOU BITCH' holding a dumbbell.

   c. Affidavit written under oath by [Cunningham] also omits the statement clearly audible of [Gillard] threatening [McDonald] before handgun was brandished."

(*Id.*).

McDonald was arrested, placed on a 24-hour hold, and required to post a $950 bond (*Id.* at p. 7). After her release from custody, McDonald slept in her car because bond conditions prevented her return to the residence (*Id.*). On August 20, 2024, the criminal charges were dismissed by the Rutherford County General Sessions Court for lack of probable cause after testimony from Phillips and Gillard (*Id.*). McDonald claims that, but for Cunningham's intentional omission of the above-mentioned facts from the Affidavit of Complaint, she would not have been charged (*Id.* at p. 8).

McDonald claims that she suffered irreparable physical damages because "the stress from the events" "permanently altered" her menstrual cycle, which caused her to go "1.5 months without a menstrual cycle" and finally having an "excruciating menstrual cycle" (*Id.* at p. 7). Further, McDonald claims that she suffered "mental damage resulting in nervousness, confusion, and irrational fear unable to successfully enter an intimate or [platonic] relationship" that will require her to engage in "continuous therapy for years to come due to emotional damage resulting in anger, withdrawal, depression and stress" (*Id.* at p. 8). Thus, McDonald seeks compensatory damages in the amount of $50,000 and punitive damages in the amount of $50,000 (*Id.* at p. 9).

### B. Procedural History

McDonald filed her complaint *pro se* on November 12, 2024, against Defendants Cunningham, La Vergne Police Department, and Cole (*Id.* at p. 5). McDonald fails, however, to identify whether she is suing Cunningham in his individual or official capacity in her complaint (*Id.*).[2] Defendants filed the instant Motion to Dismiss on November 13, 2025 (Doc. No. 11-12). McDonald filed a response in opposition (Doc. No. 13), and Defendants filed a reply (Doc. No. 14). This matter is ripe for consideration.

---

[2] McDonald later clarifies in her response to the Motion to Dismiss that Cole is sued in his individual and official capacity (Doc. No. 13).

## II.      Legal Standard

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff." *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016) (citation omitted). Further, Federal Rule of Civil Procedure 8(a)(2) requires only that a complaint contain "a short and plain statement of the claim[.]" Fed. R. Civ. P. 8(a)(2). However, "[t]he factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, i.e., more than merely possible." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). A plaintiff must plead more than "'labels and conclusions[,]'" "'a formulaic recitation of the elements of a cause of action[,]'" or "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (third alteration in original) (quoting *Twombly*, 550 U.S. at 555, 557). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). At this stage, "the Court assumes the truth of 'well-pleaded factual allegations' and 'reasonable inference[s],'" *Nat'l Rifle Ass'n of Am. v. Vullo,* 602 U.S. 175, 181 (2024) (quoting *Iqbal*, 556 U.S. at 678-79), but is "not required to accept legal conclusions or unwarranted factual inferences as true." *Huff v. Montgomery Cnty. Sheriff*, No. 3:24-cv-01503, 2025 WL 3517914, at *1 (M.D. Tenn. Dec. 8, 2025) (citing *Inner City Cont., LLC v. Charter Twp. of Northville, Mich.*, 87 F.4th 743, 749 (6th Cir. 2023)).

4

Because McDonald appears *pro se*, the Court construes her filings liberally and holds her complaint "'to less stringent standards than formal pleadings drafted by lawyers[.]'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). "However, this lenient treatment has limits." *Frengler v. Gen. Motors*, 482 Fed. Appx. 975, 977 (6th Cir. 2012) (unpublished opinion) (citations omitted). "[C]ourts are not required to conjure up unpleaded allegations or guess at the nature of an argument." *Brown v. Cracker Barrel Rest.*, 22 Fed. Appx. 577, 578 (6th Cir. 2001) (unpublished opinion) (citation omitted).

### III. Analysis

Defendants move the Court to dismiss McDonald's complaint pursuant to Rule 12(b)(6) arguing that her "[c]omplaint fails to state a claim as to the violation of the Fourth Amendment or Fourteenth Amendment. Moreover, the La Vergne Police Department is not a proper suable entity" (Doc. No. 12 at p. 2). In response, McDonald asserts that (i) she stated valid claims for judicial deception and false arrest under § 1983 and selective enforcement under the Equal Protection Clause, (ii) the La Vergne Police Department is a suable entity, (iii) Cole is liable in both his individual and official capacities, and (iv) her claims are timely under applicable tolling doctrines (Doc. No. 13).[3]

#### A. La Vergne Police Department

McDonald's complaint names the La Vergne Police Department as a Defendant (Doc. No. 1 at p. 5). Defendants assert that the La Vergne Police Department is not a proper defendant (Doc. No. 12 at p. 13). The Court agrees.

---

[3] Notably, McDonald adds her tolling claims in her response to the Motion to Dismiss, wherein she only offers conclusory statements that her allegations of "concealment and misrepresentation [] prevented timely filing," but that she has "pled facts supporting delayed discovery, continuing violation, and equitable tolling" (Doc. No. 13).

The "federal district courts in Tennessee have frequently and uniformly held that police departments and sheriff's departments are not proper parties to a § 1983 suit." *Mathes v. Metro. Gov't of Nashville & Davidson Cnty.*, No. 3:10-cv-0496, 2010 WL 3341889, at *2 (M.D. Tenn. Aug. 25, 2010); *Stacy v. Clarksville Police Dep't*, 771 F. Supp. 3d 1024, 1034 (M.D. Tenn. Mar. 21, 2025) (dismissing the § 1983 claim against the Clarksville Police Department because "a police or sheriff's department or office is not an entity capable of being sued under 42 U.S.C. § 1983").

In her response, McDonald cites *Anderson v. City of LaVergne*, 371 F.3d 879 (6th Cir. 2004), to support her contention that La Vergne Police Department is a proper entity to be sued, (Doc. No. 13); however, the holding in *Anderson* in no way stands for the proposition that the police department is a proper party in this case. *Id*. at 880. In fact, the La Vergne Police department is not even named as a defendant in *Anderson*. *Id*. at 879. The Court concurs with the great weight of authority that the La Vergne Police Department is not an entity that is capable of being sued under § 1983. *See Jones v. Pigeon Forge, TN Police Dep't*, No. 24-5485, 2024 WL 5697437, at *1 (6th Cir. Nov. 19, 2024) (unpublished opinion) (citing *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994)).

Because the La Vergne Police Department is not a proper suable entity, it is recommended that McDonald's claims against the police department be DISMISSED WITH PREJUDICE.

**B.** **Cole**

Again, McDonald's claims against Cole appear to be limited to his supervisory role within the La Vergne Mayor's Office (Doc. No. 1 at p. 5). McDonald initially states that the La Vergne Mayor's Office, not Cole specifically, was "notified of these racial discriminations and made no attempt to address nor redress the abuse of authority violating the oath of their employee" (*Id*.). McDonald later supplements that "Cole was personally informed of the misconduct and failed to act" (Doc. No. 13). It is McDonald's belief that such "deliberate inaction" supports her claim for

6

supervisory liability (*Id*.). Notably, however, McDonald provides only her conclusion that Cole "assert[s] authority over the police department" without any specific factual support (*Id*.).

The Sixth Circuit requires plaintiffs seeking damages under § 1983 to set forth clearly in their pleading in what capacity they are suing defendants. *See, e.g., Wells v. Brown*, 891 F.2d 591, 592 (6th Cir. 1989). This requirement is extended to *pro se* plaintiffs such that defendants may have clear notice of their potential liability. *Id*. at 593; *see also Goodwin v. Summit Cnty*., 703 Fed. Appx. 379, 382 (6th Cir. 2017) (unpublished opinion) (citation omitted). However, at the pleadings stage, it is appropriate to consider whether *pro se* plaintiffs misunderstand the import of capacity designations. *See, e.g., Wiggins v. Hall*, No. 3:19-cv-00144, 2019 WL 13405729, at *3 (M.D. Tenn. July 17, 2019). As such, the Court may infer such designations "from the context of the claims, the factual allegations, and the plaintiff's clear intent[.]" *Id*. (internal citation and quotation marks omitted). Nonetheless, in her response to the Motion to Dismiss, McDonald clarifies that Cole is sued in both his individual and official capacity (Doc. No. 13).

Regarding McDonald's claims against Cole in his individual capacity, Cole would only be subject to liability under § 1983 if McDonald alleged that Cole was personally involved in the deprivation of her rights. *Hanner v. City of Dearborn Heights*, 450 Fed. Appx. 440, 446 (6th Cir. 2011) (unpublished opinion); *see also Heyerman v. Cnty. of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012) (noting that "[s]upervisory officials are not liable in their individual capacities unless they either encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum, a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers" (internal citation and quotation marks omitted)). McDonald, however, has not alleged personal involvement, encouragement, or even acquiescence (Doc. Nos. 1 at p. 5 and 13).

With respect to the official capacity designation against Cole, "[a] suit against an individual in his official capacity is the equivalent of a suit against the governmental entity." *Matthews*, 35 F.3d at 1049 (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 68 (1989)). Therefore, a suit against Cole in his official capacity is a suit against the city of La Vergne, Tennessee ("La Vergne"). Under § 1983, a municipality can only be held liable if McDonald demonstrated that the alleged violations were a direct result of La Vergne's official policy or custom. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *see also Regets v. City of Plymouth*, 568 Fed. Appx. 380, 394 (6th Cir. 2014) (unpublished opinion) (citation omitted). A plaintiff can make a showing of an illegal policy or custom by demonstrating one of the following: (1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision-making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations. *Burgess v. Fisher*, 735 F.3d 462, 478 (6th Cir. 2013). However, McDonald offers only Cole's "authority over the police department" and subsequent "deliberate inaction" (Doc. No. 13). Further, McDonald makes no reference to any policy or custom at all (*Id*.). Thus, McDonald's allegations do not establish municipal liability on the part of La Vergne or Cole.

For the reasons stated, the Court recommends that McDonald's claims against Cole be DISMISSED WITH PREJUDICE for failure to state a claim under § 1983.

### C.      Cunningham

#### 1.      Qualified Immunity

Defendants argue that Cunningham is entitled to qualified immunity (Doc. No. 12 at p. 12). McDonald's reply fails to address this argument (Doc. No. 13). Based upon her failure to address the issue of qualified immunity raised by Defendants, it appears that she has waived opposition to the requested relief. *Weatherby v. Fed. Exp.*, 454 Fed. Appx. 480, 490 (6th Cir. 2012) (unpublished

opinion) (stating that "[t]hough this court provides some leeway to pro se litigants, Plaintiff must still make some effort at argumentation or presentation of facts" and absent such effort, Plaintiff's claims are waived); *see Geboy v. Brigano*, 489 F.3d 752, 767 (6th Cir. 2007) (noting the proposition "that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived" applies equally to pro se litigants); *see also Humphrey v. U.S. Attorney General's Office*, 279 Fed. Appx. 328, 331 (6th Cir. 2008) (unpublished opinion) (holding that "where, as here, plaintiff has not raised arguments in the district court by virtue of his failure to oppose defendants' motions to dismiss, the arguments have been waived") (citing *Scott v. State of Tenn.*, 878 F.2d 382, 1989 WL 72470, at *2 (6th Cir. 1989) (concluding that arguments are waived in the absence of a response or opposition to a motion to dismiss in the district court).

Despite McDonald's apparent waiver of the issue, in the interest of completeness, the Court will address the merits of whether Cunningham is entitled to qualified immunity. Qualified immunity is a defense not just against liability, but against suit itself. *Pearson v. Callahan*, 555 U.S. 223, 237 (2009). "Qualified immunity applies unless the contours of the asserted right were sufficiently clear that every reasonable official would have understood that what he was doing violated that right." *Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015). The plaintiff bears the burden of showing that the defendant is not entitled to qualified immunity. *Id*. (citation omitted).

At the pleadings stage, the plaintiff must allege "facts plausibly making out a claim that the defendant's conduct violated a constitutional right that was clearly established at the time, such that a reasonable officer would have known that his conduct violated that right." *Id*. (citation omitted). "Plaintiff is thus obliged to plead facts that, viewed in the light most favorable to him, make out a violation of a constitutional right so clearly established in a particularized sense that a

9

reasonable officer confronted with the same situation would have known that his conduct violated that right." *Id*. (citing *Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2011)). "It is error for a district court to define the relevant constitutional right in a 'generalized sense,' such as the right to be free from malicious prosecution." *Ghunim v. Cunningham*, No. 3:19-cv-00671, 2019 WL 6840332, at *5 (M.D. Tenn. Dec. 16, 2019) (quoting *Johnson*, 790 F.3d at 654). Rather, the court must consider whether the factual allegations show a violation of that right in a particularized sense. *Johnson*, 790 F.3d at 654.

The Sixth Circuit, however, has cautioned that "it is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity." *Courtright*, 839 F.3d at 518 (internal citation and quotation marks omitted). Instead, "[a]lthough an officer's entitlement to qualified immunity is a threshold question to be resolved at the earliest possible point, that point is usually summary judgment and not dismissal under Rule 12." *Id*. (quoting *Wesley v. Campbell*, 779 F.3d 421, 433-34 (6th Cir. 2015)). This is especially true where "the fact-intensive nature of the applicable tests make it 'difficult for a defendant to claim qualified immunity on the pleadings before discovery.'" *Wesley*, 779 F.3d at 434 (citation omitted). Nevertheless, "dismissal [] is appropriate when the defendant is entitled to a meritorious affirmative defense such as qualified immunity." *Peatross v. City of Memphis*, 818 F.3d 233, 240 (6th Cir. 2016) (citation omitted); *see also Gavitt v. Born*, 835 F. 3d 623, 649 (6th Cir. 2016) (affirming the dismissal of § 1983 claims on qualified immunity grounds).

Even taken in a light most favorable to her, McDonald has failed to plausibly allege that Cunningham has violated a constitutional right such that a reasonable officer, in the same circumstance, would have known the same conduct to be a violation. *Johnson*, 790 F.3d at 653-54. McDonald's bald assertions that Cunningham's conduct—specifically, omitting "I'll kill you

bitch" from an affidavit (Doc. No. 13)—is insufficient to show violations of the Fourth and Fourteenth Amendments in the general sense, let alone a particularized sense. *Id*. at 654. Similarly, McDonald has also failed to supplement her complaint with any plausible facts related to the arrest that would substantiate a reasonable official's understanding of the violation of asserted rights (Doc. No. 13).

Accordingly, the Court finds that dismissal of McDonald's § 1983 claims on qualified immunity grounds is warranted.

### 2. Failure to State a Claim under the Fourth and Fourteenth Amendments

In their motion, Defendants assert, and the Court agrees, that McDonald's complaint fails to "identify a specific legal theory as to how her Fourth and Fourteenth Amendment rights were violated" (Doc. No. 12 at p. 4). Without clear direction, Defendants presume that McDonald is making a claim of malicious prosecution under the Fourth Amendment[4] and selective enforcement claim under the Fourteenth Amendment[5] (*Id.*). In her response, McDonald clarifies that she is claiming a violation of her Fourth Amendment rights based upon "Judicial Deception" and false arrest (Doc. No. 13). She further confirms that she is making a selective enforcement claim under the Fourteenth Amendment (*Id.*). Due to the absence of clarity, the Court will construe McDonald's "Judicial Deception" claim as one for malicious prosecution.

---

[4]     Defendants' assumption stems from "Plaintiff's allegation that [Cunningham] omitted information from his affidavit of complaint" (Doc. No. 12 at p. 4).

[5]     Defendants' assumption stems from Plaintiff's conclusory allegation that she "was discriminated against due to her race" (*Id*.).

### a. Fourth Amendment Claims

### i. False Arrest

McDonald claims that Cunningham lacked probable cause to arrest her (Doc. No. 1 at p. 8). The probable-cause inquiry for malicious prosecution and false arrest overlap, but they are not identical. *Alford v. Deffendoll*, 165 F.4th 490, 500 (6th Cir. 2026). For example, "false-arrest and malicious-prosecution claims require courts to analyze whether probable cause existed at two distinct points in time—the time that the defendant arrested the plaintiff versus the time that the defendant participated in the prosecution." *Id*. (citation omitted).

"A false arrest claim under federal law requires a plaintiff to prove that the arresting officer lacked probable cause to arrest the plaintiff." *Sykes v. Anderson*, 625 F.3d 294, 305 (6th Cir. 2010) (quoting *Voyticky v. Village of Timberlake, Ohio*, 412 F.3d 669, 677 (6th Cir.2005)). "[A]n arrest based on a facially valid warrant approved by a magistrate provides a complete defense." *Id*. In order to prevail on a false-arrest claim, a plaintiff is required to prove by a preponderance of the evidence that in order to procure the warrant, the arresting officer "knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create[d] a falsehood" and "such statements or omissions [we]re material, or necessary, to the finding of probable cause." *Sykes*, 625 F.3d at 305 (quoting *Wilson v. Russo*, 212 F.3d 781, 786-87 (3d Cir. 2000)). If the affidavit contains false statements or material omissions, the court sets aside the statements and includes the information omitted in order to determine whether the affidavit is still sufficient to establish probable cause. *Sykes*, 625 F.3d at 305 (citations omitted).

Because McDonald's false arrest claim is limited temporally, McDonald has not shown that the facts omitted from the affidavit of complaint were material to the probable cause determination *at the time of arrest* (Doc. Nos. 1 at p. 5-6 and 13). *Alford*, 165 F.4th at 500; *Sykes*,

12

625 F.3d at 305. According to the complaint, Cunningham arrived at the scene of the incident, interviewed McDonald, Gillard, and Phillips, and then reviewed the Ring doorbell audio recordings (Doc. No. 1 at p. 6). With the benefit of that information, Cunninghan then charged McDonald with two counts of Aggravated Assault in violation of T.C.A. § 39-13-102 (*Id.*). The criminal statute provides, in relevant part, that "[a] person commits aggravated assault who [i]ntentionally or knowingly commits an assault as defined in § 39-13-101, and the assault . . . (iii) [i]nvolved the use or display of a deadly weapon[.]" Tenn. Code Ann. § 39-13-102; *see also* Tenn. Code Ann. § 39-13-101 ("[a] person commits an assault who . . . intentionally or knowingly causes another to reasonably fear imminent bodily injury"). The fact remains that McDonald, by her own admission (Doc. Nos. 1 at p. 6 and 13), brandished a firearm and that act, based on the totality of the circumstances, was sufficient to warrant her arrest.

Thus, because there was probable cause to arrest her for aggravated assault, the Court recommends that McDonald's false arrest claim under the Fourth Amendment be DISMISSED for failure to state a claim to relief under 42 U.S.C. § 1983.

### ii.        Malicious prosecution

Next, Defendants move to dismiss McDonald's malicious prosecution claim (Doc. No. 12 at p. 12), which the Sixth Circuit describes as "a constitutional claim—grounded in the Fourth Amendment—against government officials whose 'deliberate or reckless falsehoods result in arrest and prosecution without probable cause.'" *Creger v. Tucker*, Nos. 23-5045/5047, 2024 WL 124437, at *10 (6th Cir. 2024) (unpublished opinion) (quoting *Newman v. Twp. of Hamburg*, 773 F.3d 769, 771–72 (6th Cir. 2014)). To successfully bring a § 1983 malicious prosecution claim, a plaintiff must plausibly allege four elements: "(1) the defendant made, influenced, or participated in the decision to prosecute the plaintiff; (2) there was no probable cause for the prosecution; (3)

as a consequence of the legal proceedings, the plaintiff suffered a deprivation of liberty apart from the initial arrest; and (4) the criminal proceeding was resolved in the plaintiff's favor." *Monson v. City of Detroit*, Nos. 22-2050/2122, 2024 WL 84093, at *6 (6th Cir. Jan. 8, 2024) (unpublished opinion) (quoting *France v. Lucas*, 836 F.3d 612, 625 (6th Cir. 2016)). "[M]alice is not an element of a § 1983 suit for malicious prosecution." *Sykes*, 625 F.3d at 310. In the malicious-prosecution context, the Supreme Court recently clarified that courts must analyze probable cause charge by charge. *Chiaverini v. City of Napoleon, Ohio*, 602 U.S. 556, 562 (2024).

For the limited purposes of their motion, Defendants concede that all but one of the elements has been established (Doc. No. 12 at p. 6-7). That is, they contest only that McDonald's complaint fails to establish a lack of probable cause (*Id.*). Specific to the malicious-prosecution context, probable cause exists "when the police have reasonably trustworthy information . . . sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense." *Ghunim*, 2019 WL 6840332, at *6 (citing *Gardenhire v. Schubert*, 205 F.3d 303, 315 (6th Cir. 2000)). "Probable cause is a 'fluid concept' that 'depends on the totality of circumstances' and 'requires only a probability or substantial chance of criminal activity, not an actual showing of such activity.'" *Ghunim*, 2019 WL 6840332, at *6 (citing *Dist. of Columbia v. Wesby*, 583 U.S. 48, 57 (2018)). "In obtaining such reliable information, an officer cannot look only at the evidence of guilt while ignoring all exculpatory evidence. Rather, the officer must consider the totality of the circumstances, recognizing both the inculpatory and exculpatory evidence, before determining if he has probable cause to make an arrest." *Ghunim*, 2019 WL 6840332, at *6 (citing *Gardenhire*, 205 F.3d at 318).

Here, the question for the Court is whether, based upon the totality of the circumstances, Cunningham had reasonably trustworthy information sufficient to warrant a prudent man in

believing that McDonald had committed an Aggravated Assault. *Ghunim*, 2019 WL 6840332, at *6; Tenn. Code Ann. § 39-13-102. The Court answers in the affirmative. The facts set forth in the complaint, including the "I'll kill you bitch" statement omitted from the affidavit of complaint, were sufficient to warrant her being charged and prosecuted (Doc. Nos. 1 at p. 5-6 and 13). During the altercation, McDonald told Phillips to "get out of my face" and brandished a firearm (Doc. No. 1 at p. 5). Regardless of whether Garland said "I'll kill you bitch" while holding a dumbbell, it would have appeared to a reasonable officer on the scene that McDonald had intentionally caused Phillps and Garland to reasonably fear imminent bodily injury by brandishing the firearm (Doc. Nos. 1 at p. 5-6 and 13).

McDonald appears to argue that she was acting in self-defense when brandishing the firearm and the exculpatory facts that support her contention were omitted from the affidavit of complaint (Doc. No. 13).[6] However, under Tennessee law, self-defense is a "general defense" (rather than an "affirmative defense") that, once fairly raised by a defendant, is decided by the jury, and the prosecution has the burden of proving "beyond a reasonable doubt that the defense does not apply." *State v. Hawkins*, 406 S.W.3d 121, 129 (Tenn. 2013); *see also* Tenn. Code Ann. § 39-11-203. It follows that whether McDonald was acting in self-defense was a question of fact to be resolved by a jury and the omissions were not material to probable cause (Doc. No. 1 at p. 6-7). For purposes of clarity, it bears repeating that McDonald admits to brandishing the firearm (*Id*. at p. 5). None of the omissions relied on by McDonald call this fact into question (*Id*.).

---

[6]     McDonald also cites to *Franks v. Delaware*, 438 U.S. 154 (1978) in support of her claims that (i) Cunningham's omission was intentional or reckless and (ii) the omitted information was material to a probable cause determination (Doc. No. 13). However, *Franks* is inapplicable because it addresses intentional inclusions of knowingly false statements, not omissions. *Id*.

Thus, because there was probable cause to initiate criminal proceedings against McDonald, the Court recommends that McDonald's malicious prosecution claim under the Fourth Amendment be DISMISSED for failure to state a claim to relief under 42 U.S.C. § 1983.

### b. Fourteenth Amendment Claim

McDonald asserts that she "was treated differently than similarly situated individuals," "the officer's actions were motivated by racial bias and prior incidents involving Black individuals," and the "treatment was not justified by any legitimate enforcement objective" (Doc. No. 13). Defendants contend that McDonald's claim of selective enforcement fails because she has come woefully short of making the necessary prima facie showing that similarly situated persons outside her category were not prosecuted (Doc. No. 12 at p. 11). The Court agrees. McDonald's conclusory statements are insufficient to state a claim for selective enforcement under the equal protection clause of the Fourteenth Amendment.

"To state a viable claim under this theory, the plaintiff must allege facts supporting three elements: 'First, [the state actor] must single out a person belonging to an identifiable group . . . for prosecution even though he has decided not to prosecute persons not belonging to that group in similar situations. Second, he must initiate prosecution with a discriminatory purpose. Finally, the prosecution must have a discriminatory effect on the group which the defendant belongs to.'" *Lamar v. Boles*, 714 F. Supp. 3d 987, 1018 (M.D. Tenn. Jan. 31, 2024) (quoting *Rieves v. Town of Smyrna*, 959 F.3d 678, 700 (6th Cir. 2020)). A plaintiff must allege that "[1] she has been intentionally treated differently from others similarly situated and [2] that there is no rational basis for the difference in treatment." *Lamar*, 714 F. Supp. 3d at 1018 (quoting *Johnson v. Morales*, 946 F.3d 911, 939 (6th Cir. 2020)). A plaintiff can show that "a government action lacks a rational basis in one of two ways: either by negat[ing] every conceivable basis which might support the

government action or by demonstrating that the challenged government action was motivated by animus or ill-will." *Id.*

As to the first element, McDonald has not pled sufficient facts to support the contention that she was singled out by Cunningham because of her race or that he, or any other named Defendant, decided not to prosecute persons of a different race in similar situations. *See Lamar*, 714 F. Supp. 3d at 1018. In fact, McDonald merely identified herself as an African-American and Cunningham as a "mixed Caucasian / African American" (Doc. No. 1 at p. 5). McDonald has otherwise not pled any facts at all to support her conclusion that she was "treated differently than similarly situated individuals" (Doc. No. 13). Further, McDonald makes no mention at all of individuals belonging to a different identifiable group (*Id.*). *See Stemler v. City of Florence*, 126 F.3d 856, 873 (6th Cir.1997) (stating that "it is an absolute requirement that the plaintiff make at least a prima facie showing that similarly situated persons outside her category were not prosecuted.").

Second, McDonald has failed to plead any facts that the Defendants initiated the prosecution with discriminatory purpose. *See Lamar*, 714 F. Supp. 3d at 1018. There is no indication in the complaint that any Defendant made any statements to her to indicate a racial animus or that any actions by Defendants indicated a discriminatory purpose. The only fact she asserts, outside of the incident that led to her arrest, was an unrelated interaction with Cunningham a year prior when he refused to charge her "African American" friend for stealing her firearm (Doc. No. 1 at p. 5-6). This prior occurrence does nothing to advance her claim for selective enforcement.

Finally, McDonald has neither alleged that her prosecution has a discriminatory effect on her protected class as a group, nor shown that the government action lacked a rational basis. *See*

*Lamar*, 714 F. Supp. 3d at 1018. Instead, McDonald offers only that there was no "legitimate law enforcement objective" (Doc. No. 13). Such a conclusion is insufficient to either negate every conceivable basis which might support Cunningham's actions or demonstrate that Cunningham was motivated by animus or ill-will. *Id.*

For these reasons, the Court recommends that McDonald's claim of selective enforcement under the Fourteenth Amendment be DISMISSED for failure to state a claim to relief under 42 U.S.C. § 1983.

## IV.     Recommendation

For the foregoing reasons, IT IS RECOMMENDED that the Motion to Dismiss (Doc. No. 11) be Granted.

Any party has 14 days after being served with this Report and Recommendation to file specific written objections. Failure to file specific objections within 14 days of receipt of this Report and Recommendation can constitute a waiver of appeal of the matters decided. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004). A party who opposes any objections that are filed may file a response within 14 days after being served with the objections. Fed. R. Civ. P. 72(b)(2).

Entered this 10th day of April, 2026.

_____
LUKE A. EVANS
United States Magistrate Judge